UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,                          **OPINION AND ORDER**

    - v -

                                                  CR-04-0580 (VVP)

TALITA ROBINSON,

                Defendant.
----------------------------------------------------------------x

POHORELSKY, Magistrate Judge:

      Defendant Talita Robinson ("Robinson") seeks an order to seal or expunge her criminal arrest and conviction record. As set forth below, Robinson has not established a basis for expungement, and the motion is therefore denied.

## BACKGROUND[1]

      On September 28, 2004, Robinson pleaded guilty to one misdemeanor count for the theft of government funds, a violation of 18 U.S.C. § 641, in connection with submitting false income statements for three years and eight months to the New York City Housing Authority ("NYCHA"). For this crime, Robinson was sentenced to thirty-nine months probation and ordered to make restitution to NYCHA for the housing subsidies she unlawfully received. In January 2007, Robinson made full payment on the restitution amount, and to the best of the court's knowledge has thus far complied with the terms of her probation which is scheduled to end in April 2008.

      Robinson has no prior arrest or conviction record. Her background, however, is marked by personal and financial adversity. She was raised by her grandmother who was dependent on public assistance. Robinson's father never established a stable relationship with her, while her mother was a drug addict who died of tuberculosis when Robinson was fourteen years old. As an adult, Robinson lived in shelters for women and children and cared for her first child without the father's support. In the face of these challenges, Robinson earned a Master's degree in education

---

[1] The following facts are adduced from transcripts of relevant court proceedings and submissions from the parties, including the documents appended thereto.

and, since 1995, she has worked as a teacher in New York and New Jersey. Since her conviction, Robinson has continued to develop her career in special education and support her two children.

Days after making full restitution, Robinson filed a *pro se* motion asking the court to seal or expunge her arrest and conviction record. Upon notice from the court, Robinson's attorney subsequently provided additional support for the motion. Robinson seeks the expungement in order to regain her teaching certificate, which the state of New Jersey revoked in reliance on Robinson's criminal record. Without the certificate, Robinson is unable to teach and is therefore without means to support herself or her two children. The government has opposed the motion.

## DISCUSSION

### I. Legal Standard

28 U.S.C. § 534 requires the Attorney General of the United States "to acquire, collect, classify and preserve" criminal records. 28 U.S.C. § 534(a) (2007). A related regulation, 28 C.F.R. § 20.33, authorizes the Department of Justice to disseminate criminal history records "for criminal justice purposes" and "for use in connection with licensing or employment." 28 C.F.R. § 20.33 (2007). This regime of maintaining and exchanging criminal identification records serves "not only the immediate needs of law enforcement for identification and reference in future criminal proceedings, but also punishment and deterrence, as well as public information needs, as appropriate." *United States v. Morelli*, No. 91-CRIM-639(MHD), 1999 WL 459784, at *1 (S.D.N.Y. June 30, 1999).

Given the governmental and public interest in an accurate criminal identification system, the Second Circuit has recognized that while courts possess the inherent equitable authority to expunge criminal records, they are to exercise this authority only under "extreme circumstances." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (quoting *United States v. Rosen*, 343 F. Supp. 804, 807 (S.D.N.Y. 1972)); *United States v. McFadzean*, No. 93-CR-25-CSH, 1999 WL 993641, at *2 (S.D.N.Y. Nov. 2, 1999). In articulating this standard, the Second Circuit in *Schnitzer* identified the following instances of extreme circumstances under which expungement was warranted: (1) where mass arrests made probable cause impossible to determine; (2) where arrests were made strictly to harass civil rights workers; (3) where an arrest and conviction were supported by a statute later declared unconstitutional; and (4) where the government misused

criminal records. *Schnitzer*, 567 F.2d at 540 (citations omitted); *United States v. Hasan*, No. 98-CR-786(ILG), 2002 WL 31946712, at *1 (S.D.N.Y. Dec. 4, 2002). The common theme running through these examples is that expungement is justified when arrests or convictions are subsequently found to be meritless, never adjudicated, or invalid due to improper government action. *Morelli*, 1999 WL 459784, at *5.

Courts have furthermore been clear that the consequences attendant to possessing a criminal record, such as loss of financial or employment opportunities, do "not fall within the narrow bounds [...] where expungement has been declared appropriate." *Schnitzer*, 567 F.2d at 540; *see also United States v. Sherman*, 782 F. Supp. 866, 870 (S.D.N.Y. 1991) ("While the court recognizes that having a criminal record affects the path that Sherman's life will take, it disagrees with his contention that this should not be the case."); *United States v. Fields*, 955 F. Supp. 284, 285 (S.D.N.Y. 1997) ("[T]he difficulties faced by Fields in finding and keeping a steady job do not rise to the level of 'extreme circumstances' required before a court will exercise its inherent power to expunge."); *Morelli*, 1999 WL 459784, at *2-3 (facing significant medical expenses for his child and limits on his employment options, Morelli's "situation [...] does not come remotely close to demonstrating the 'extreme circumstances' that would justify the relief he seeks."). Thus, while courts do consider the "harm that the maintenance of arrest records can cause citizens" *Schnitzer*, 567 F.2d at 539, they reserve expungement primarily for the rare and extreme circumstance when an arrest or conviction is invalidated by government error or misconduct and the defendant's innocence is presumed. *See Schnitzer*, 567 F.2d at 540; *Morelli*, 1999 WL 459784, at *1; *In re Kerwin Farkas*, 783 F. Supp. 102, 103 (E.D.N.Y. 1992).

**II. Application**

Applying these principles, the court concludes that expungement is not warranted in this case. To support her motion for expungement, Robinson argues, first, that the loss of her teaching certificate due to her criminal record threatens her ability to provide for herself and her children, and second, that the government interest in maintaining her record is weak.

As to her first argument, the court acknowledges the financial hardships Robinson has overcome and commends her personal and professional successes; nonetheless, consistent with the law of this circuit, the consequences she faces as a result of her conviction record do not

-3-

provide a basis for expungement. Robinson stresses that she confronts actual, not speculative, economic harm from the retention of her criminal record and points to cases, specifically, *United States v. Doe*, 935 F. Supp. 478 (S.D.N.Y. 1996) and *United States v. Van Wagner*, 746 F. Supp. 619 (E.D. Va. 1990), where other defendants established actual threat to their employment or financial independence and were granted expungement. To be sure, the *Doe* and *Van Wagner* courts did consider actual economic harm as an important factor in reaching their respective conclusions to grant expungement. *Doe*, 935 F. Supp. at 481; *Van Wagner*, 746 F. Supp. at 622. Consideration of a criminal record's adverse effects, however, was only one aspect of those courts' expungement analyses, and by no means the most significant. Rather, what ultimately tipped the scales of so-called "extreme circumstances" in favor of expungement for both courts, and what does not exist in this case, is the fact that the criminal records at issue were either set aside or otherwise deemed invalid. *Doe*, 935 F. Supp. at 481; *Van Wagner*, 746 F. Supp. at 621-22.

In *Doe*, the defendant sought expungement only after the underlying conviction had been set aside under the Youth Corrections Act, 18 U.S.C. § 5021(b) (repealed 1984), whose " 'clear purpose," as noted by Judge Chin, was " 'to relieve [a youthful offender] not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a record tainted by such a conviction.' " 935 F. Supp. at 481 (citing *Mestre Morera v. INS*, 462 F.2d 1030, 1032 (3d Cir. 1972)). The *Doe* court, in fact, considered the set-aside under the Youth Corrections Act the "most important" factor in its decision to grant expungement – an analysis that did include the record's economic effects – concluding that "if this case does not present 'extreme circumstances' [justifying expungement] it is difficult to imagine one that would." *Id.*

In *Van Wagner*, expungement was granted primarily because the criminal record at issue was the product of an arrest that the government acknowledged should not have taken place after it discovered, in an ensuing investigation, that the defendant was not a participant in a drug conspiracy, the basis upon which the arrest had been initially effected. *Van Wagner*, 746 F. Supp. at 621-22. And, it was this fact – the unmistakable concession of the defendant's innocence – together with the resulting economic detriment, that led to a finding of "extreme circumstances," which, in turn, led to expungement. *Id.* at 622 ("The Court notes, however, that what is

extreme in this case is not the economic hardship *per se* caused by Van Wagner's arrest record. Rather, the compelling unfairness justifying expungement here is that a wholly innocent individual, mistakenly arrested and indicted, but supposedly presumed innocent of all charges, is nonetheless suffering adverse consequences no different from those he would have endured had he in fact been charged, arrested, and convicted of a crime.") (footnote omitted).

Therefore, while both *Doe* and *Van Wagner* did take actual economic hardship into account, the overriding factor warranting expungement pertained to some unique circumstance, i.e., the setting-aside of a conviction or actual innocence, that, in essence, completely undercut the interest served by retaining the criminal records at issue. Robinson, in contrast, does not challenge the validity of her arrest or conviction, or the circumstances which led her to plead guilty. She does not claim any form of government misconduct or error, and her criminal record accurately reflects the crime she committed. *Doe* and *Van Wagner* are therefore inapposite to the point at hand.

In her second argument, Robinson brings to the court's attention another circumstance which she contends, in combination with her assertion of actual economic hardship, justifies expungement of her record. Robinson argues that the federal interest is relatively weak in maintaining her criminal record because it pertains to a misdemeanor rather than a felony offense. Robinson, however, does not cite any cases where courts distinguished between a felony and misdemeanor in ruling on a motion to expunge.[2] Instead, she supports her argument with reference to a statute that authorizes the creation of a "repository" of "conviction records," 18 U.S.C § 3662(a), whose purpose, it appears, was to supply federal courts with "admissible [. . .] evidence," H.R. REP. NO.91-1549, at 4011 (1970), to aid in sentencing determinations, *cf.* 18 U.S.C § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Any federal interest implicit in the priority this statute gives to retaining felony convictions, however, is of no

---

[2] Nor has the court identified cases where it was relevant that the defendant sought to expunge the record of a misdemeanor rather than a felony offense. The Second Circuit furthermore has routinely upheld the denial to expunge misdemeanor convictions. *Hasan*, 2002 WL 31946712; *Morelli*, 1999 WL 459784.

relevance here since the repository authorized under section 3662 is entirely separate from, and serves a purpose different from, the criminal identification system from which Robinson asks that her record be expunged.[3] *See* 28 U.S.C. § 534. As to that system, Robinson does nothing to distinguish her criminal record from its broad purpose and purview to maintain and exchange all criminal history records. In implementing the criminal identification system from which Robinson wishes expungement, the Department of Justice did create a few exclusions as to certain offenses which would not be encompassed within the system. But that exclusion, as the related regulation makes clear, only deals with "arrests and court actions concerning nonserious offenses" such as "drunkenness, vagrancy, [...] and traffic violations."[4] 28 C.F.R. § 20.32(b) (2007). Robinson's offense—theft of government funds—does not fall under this exclusion. Nor is the court able to read into the regulation any sort of implicit exclusion of misdemeanor offenses. Had the Department of Justice intended to exclude misdemeanors it would have done so explicitly. The absence of such an exclusion demonstrates that the system was intended to cover all criminal offenses other than those of a "nonserious" nature.[5]

The court recognizes that the statutory regime set up by New Jersey to regulate the employment of its teachers erects a nearly insurmountable hurdle for those with criminal records who seek teaching jobs in the state.[6] The statute is clear that an employee whose criminal

---

[3] The Attorney General maintains the records at issue for expungement in different repositories (e.g., National Crime Information Center database, Interstate Identification Index System, Fingerprint Identification Records System, and the National Instant Criminal Background Check System), and under 28 C.F.R. § 20.33, the Department of Justice may provide criminal record information retained in these repositories for licensing and employment purposes, as well as to the public generally. 28 U.S.C. § 534; 28 C.F.R. § 20.3 (2007); 28 C.F.R. § 20.33.

[4] Other "nonserious offenses" include: "disturbing the peace, curfew violation, loitering, false fire alarm, and non-specific charges of suspicion or investigation." 28 C.F.R. § 20.32(b).

[5] The court is aware that the Federal Bureau of Investigation has proposed amending the regulation to include those "nonserious offenses" which had been excluded in the 1970s primarily to alleviate its workload prior to the introduction of automated systems for storing and searching digitized fingerprint images. Inclusion of Nonserious Offense Identification Records, 71 Fed. Reg. 52302 at *52302-304 (proposed Sept. 5, 2006).

[6] *See* N.J.Stat. Ann. § 18A:6-7.1 ("A facility, center, school, or school system under the supervision of the Department of Education and board of education which cares for, or is involved in the education of children [...] may require criminal history record checks for individuals who [...] provide services that involve regular contact with pupils.")

history record "reveals a record of conviction for," among other offenses, "perjury and false swearing" – the equivalent of what Robinson has been convicted of here – "shall be *permanently* disqualified from employment or service . . . ." N.J. Stat. Ann. § 18A:6-7.1(c)(2) (emphasis added).[7] There is no question that New Jersey's revocation of Robinson's certificate to teach handicapped children after it became aware of her conviction record has harsh consequences. The loss of her teaching certificate will significantly affect her employment opportunities and therefore her ability to support her children and herself. One cannot help but question whether such a harsh result is warranted in a case such as this. That judgment, however, is one for the people of the State of New Jersey to make. It is not the province of the court to substitute its own judgment about the licensing of teachers in New Jersey by expunging a criminal record from a system whose purpose is to provide a repository of information for use in making such determinations. *See Farkas*, 783 F. Supp. at 104; *Hasan*, 2002 WL 31946712, at *2-3. It is nevertheless the court's hope that employers will have the wisdom to overlook a lapse in judgment for which Robinson has so completely atoned. *See Hasan*, 2002 WL 31946712, at *3 (Glasser, J.) ("To merely pay lip service, however, to the tenet of 'paying one's debt to society' and to continue to regard that debt as never to be absolved is socially self-defeating and morally wanting."). To do so would serve both Robinson's and the community's interests.

## CONCLUSION

For the foregoing reasons, the defendant's motion for an order to expunge her criminal record is denied.

SO ORDERED:

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
July 18, 2007

---

[7] Under New Jersey law, an offense of "perjury and false swearing" is committed when, among other things, an individual "makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable." N.J. Stat. Ann. § 2C:28-3(a).